**UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL A. SALVATIERRA, D.O., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 1:23-cv-00152 |
| | : | |
| v. | : | |
| | : | |
| LAKE ERIE COLLEGE OF | : | |
| OSTEOPATHIC MEDICINE (LECOM), | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

In January 2018, Plaintiff Daniel A. Salvatierra, D.O., entered in a first year ("PGY 1") internal medicine residency contract ("Contract") with Millcreek Community Hospital ("Millcreek"), a sister entity of Defendant Lake Erie College of Osteopathic Medicine ("LECOM"). [*See* ECF No. 7, Am. Compl. Ex. D]. Although Millcreek's internal medicine residency program lasts multiple years, there is no automatic promotion from one year to the next. [Am. Compl. Ex. D § XII]. Residents must meet certain performance standards as determined by the program director to advance to the next year of the program. [*Id.* §§ II, VI.C].

The Contract explicitly contained a one-year term. [*Id.* § II]. The Contract was later amended twice to extend the term of Salvatierra's PGY 1 year of

1

residency, first until March 2019, and then until June 2019, "due to performance/readiness issues." [*Id.* pp. 10-11].

On April 17, 2019, Millcreek notified Salvatierra that it was not renewing his contract and that he was being dismissed from the residency program. [Am. Compl. ¶ 30]. Salvatierra did not appeal his dismissal pursuant to the disciplinary grievance procedure set forth in the Millcreek Training Program Manual/House Staff Manual and incorporated into the Contract. [*See* Am. Compl. ¶¶ 36-37].

Now, almost four years later, Salvatierra attempts to bring a breach of contract claim against LECOM seeking $50,000,000 in damages he alleges to have suffered due to his dismissal from the residency program. [*See* Am. Compl. ¶ 49]. But Salvatierra's Amended Complaint fails to state a viable claim for relief. Salvatierra had no right (contractual or otherwise) to advance within the residency program. Millcreek's decision to not renew the Contract for a second year of the residency program cannot give rise to a breach of contract claim as a matter of law.

Instead, the Amended Complaint attempts to plead breaches of a purported contract between LECOM, Salvatierra, the Accreditation Counsel for Graduate Medical Education ("ACGME") and the Centers for Medicare and Medicaid Services ("CMS"), based on ACGME's residency program accreditation requirements. [Am. Compl. ¶¶ 9, 16-17]. The ACGME accreditation requirements

2

are not a contract.  Thus, Salvatierra's Amended Complaint fails to plead a claim upon which relief can be granted and must be dismissed.

## I.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

Salvatierra initiated this action by filing a Complaint asserting a claim for breach of contract in the Court of Common Pleas of Erie County on or about April 13, 2023.  Defendant was served with the Complaint on April 20, 2023, and timely removed this action to this Court on May 18, 2023.  [*See* ECF No. 1].

Defendant filed a Motion to dismiss the Complaint on May 25, 2023.  [ECF No. 2].[1]  The Court denied the Motion to dismiss without prejudice on May 31, 2023, and directed the parties to meet and confer to determine whether the identified pleading deficiencies may be cured by amendment.  [*See* ECF No. 6]. Plaintiff and counsel for Defendant met and conferred on June 9, 2023, and Plaintiff filed an Amended Complaint on June 13, 2023.  [*See* ECF No. 7]. Defendant now timely files a Motion to dismiss the Amended Complaint and submits this Brief in support.

As best as LECOM can decipher, Salvatierra's Amended Complaint pleads a claim for breach of contract stemming from his dismissal from Millcreek's

---

[1] As certified in Defendant's Motion to dismiss the original Complaint, the undersigned attempted in good faith to meet and confer, and exchanged several voicemails with Salvatierra, prior to filing.

residency program.[2]  The Amended Complaint alleges that Salvatierra and

Millcreek entered into the Contract related to Salvatierra's participation in

Millcreek's internal medicine residency program on January 9, 2018.  [Am.

Compl. ¶¶ 7, 12].  The Contract stated that it was an agreement for only the first

year (PGY 1) of Millcreek's residency program, and "shall be in effect for a period

not to exceed one (1) year from January 9, 2018 through January 8, 2019[.]"  [Am.

Compl. Ex. D § II].  The Contract also provided that Salvatierra "understands and

acknowledges that this agreement expires no later than one (1) year after its

commencement date and that [Millcreek] does not commit itself to renewal of this

agreement."  [*Id.* § XII].

In addition, the Contract required Salvatierra to meet certain minimum

performance standards:  "All appointments (agreements) are for a period of one (1)

year.  The trainee may be reappointed for each subsequent year of training

contingent upon the trainee's satisfactory completion of the previous post-graduate

year."  [*Id.* § XI].  The Contract obligated Salvatierra to "meet or exceed all

minimum requirements and educational performance standards associated with the

training program, as determined and communicated to the trainee by the specific

---

[2] The Amended Complaint also references a discrimination claim Salvatierra filed
with the Equal Employment Opportunity Commission ("EEOC").  [Am. Compl.
¶¶ 39-42].  The Court should disregard these extraneous allegations because
Salvatierra admittedly did not file a lawsuit within ninety (90) days of the EEOC's
Dismissal and Notice of Rights, [*see* Am. Compl. ¶ 40 & Ex. H], and Salvatierra
has not asserted a discrimination claim in this action.

Program Director and/or the Program Director's designee[.]"  [*Id.* § VI.C).  To this end, the Contract afforded Millcreek a discretionary right to terminate the Contract without notice if "[t]he Program Director determines that the trainee's performance falls below the minimum standards for patient care and, as such, endanger[s] patient care."  [*Id.* § IX.A.2].

The Contract also incorporated a disciplinary grievance procedure set forth in the Millcreek Training Program Manual/House Staff Manual ("Staff Manual"). [*See* Am. Compl. Ex. E].  The Staff Manual contained a Due Process Policy pursuant to which a resident subject to corrective action of probation, suspension, or dismissal had five days to submit a request for a hearing before the Graduate Medical Education Committee.  [*Id.* pp. 20-23].

As intimated in the Amended Complaint, Salvatierra's performance during his PGY 1 year failed to meet the program's minimum performance standards and thus, Millcreek offered Salvatierra multiple performance evaluation counseling sessions.  [Am. Compl. ¶¶ 26, 33 ("Plaintiff sat down for a third and final performance evaluation meeting.")].  Because of his poor performance, Salvatierra's PGY 1 residency year was twice extended for a total of an additional six months, explicitly because of "performance/readiness issues."  [Am. Compl. Ex. D pp. 10-11].  Salvatierra acknowledged his performance failures by executing these two addendums to the Contract.

On April 5, 2019, Salvatierra was providing care to a Millcreek emergency room patient who suffered a fall that required transfer to a trauma hospital for further treatment.  [Am. Compl. ¶ 25].  In accordance with Millcreek's regulatory obligations, Millcreek submitted a formal report of this incident through the Pennsylvania Patient Safety Reporting System.  [*Id.* ¶ 26].

Given Salvatierra's consistently deficient performance, this serious incident suffered by a patient in Salvatierra's care was the proverbial last straw.  On April 17, 2019, Millcreek notified Salvatierra he was being dismissed from the residency program.  [*Id.*  ¶ 30].  Salvatierra did not exercise his contractual right to appeal his dismissal pursuant to the Staff Manual's grievance procedures.  [*Id.*  ¶¶ 32-37].

## II.   STATEMENT OF THE QUESTIONS INVOLVED

1.    Should the Court dismiss Plaintiff's Amended Complaint with prejudice for failure to state a claim because the ACGME requirements do not constitute a contract, and because Millcreek had no duty to renew the Contract or to allow Salvatierra to progress through the residency program?

**Suggested Answer:  Yes.**

2.    In the alternative, should the Court dismiss Plaintiff's claim for emotional distress and punitive damages because such damages are not recoverable in a breach of contract action?

**Suggested Answer:  Yes.**

## III.   ARGUMENT

### A. The Motion to dismiss standard is well-settled.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face." *Hitch v. The Frick Pittsburgh*, No. 2:22-CV-1801, 2023 WL 3044000, at *2 (W.D. Pa. Apr. 21, 2023) (citations omitted). As explained by the Third Circuit:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quotation omitted).

Although courts must view well-pleaded facts in the light most favorable to the plaintiff, courts are "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Hitch*, 2023 WL 3044000, at *2 (quoting *Baroka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).[3]

---

[3] Because Salvatierra is proceeding pro se, the court should hold his pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Copeland v.*

**B. The Amended Complaint fails to plead a claim upon which relief can be granted.**

**1. Salvatierra fails to plead a breach of contract claim for purported breaches of ACGME requirements because the ACGME requirements are not a contract.**

Even when viewed in the light most favorable to Salvatierra, the allegations in the Amended Complaint fail to state a claim upon which relief can be granted. The Amended Complaint baldly alleges that ACGME's accreditation requirements constitute a contract among ACGME, LECOM, Salvatierra, and CMS. Salvatierra alleges that LECOM committed multiple breaches of ACGME requirements.

The Court, however, must not accept this unsupported legal conclusion that the ACGME requirements constitute a contract. No contract exists among ACGME, LECOM, Salvatierra, and CMS.

The ACGME's requirements are standards LECOM was required to meet to maintain its internal medicine residency accreditation. Although few courts have considered the issue of whether ACGME requirements constitute a contract, those that have analyzed this issue have held that they do not. In *Castrillon v. St. Vincent Hospital & Health Care Center, Inc.*, a federal court explained that the ACGME's requirements:

---

*Oberlander*, No. 1:22-CV-00109-RAL, 2023 WL 3177832, at *2 (W.D. Pa. May 1, 2023) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). But "federal courts treat pro se litigants the same as any other litigant," and "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) (citations omitted).

> are akin to regulations established by an administrative body, rather than a contract . . . . If [a residency program] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the residency program], but rather a decision by ACGME, as a regulatory institution, that [the residency program] is no longer entitled to accreditation.

51 F. Supp. 3d 828, 843 (S.D. Ind. 2014); *see also Malakoff v. Alton Ochsner Med. Found.*, No. 99-3603, 2000 WL 805232, at *3 (E.D. La. June 20, 2000), *aff'd*, 253 F.3d 706 (5th Cir. 2001) ("Nor do the [ACGME] Guidelines themselves contain the requisites for formation of a contract.  The Guidelines are more in the nature of a directive or policy statement.  The court finds that the Guidelines do not evidence a contractual relationship.").

In *Kaianpour v. Board of Regents of the University System of Georgia*, a federal court dismissed breach of contract claims based on alleged violations of ACGME requirements.  No. 120CV00152MLBRGV, 2021 WL 2638999, at *42 (N.D. Ga. Jan. 28, 2021), *report and recommendation adopted as modified sub nom. Kavianpour v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:20-CV-152-MLB, 2021 WL 2635854 (N.D. Ga. Mar. 29, 2021), *reconsideration denied*, No. 1:20-CV-152-MLB, 2021 WL 3285445 (N.D. Ga. Aug. 2, 2021).  Likewise, in *Rice v. St. Louis University*, a district court granted summary judgment in favor of a residency program on breach of contract claims premised on alleged violations of

ACGME requirements.  No. 4:19-CV-03166 SEP, 2020 WL 3000431, at *5 (E.D.

Mo. June 4, 2020).

This case law is consistent with the Pennsylvania Code, which provides that

the ACGME works with the State Board of Medicine to evaluate and approve

residency programs in the Commonwealth:

> The Board is responsible for determining the character of instruction and the facilities possessed by each of the various medical education institutions and hospitals who carry out graduate medical education programs in this Commonwealth. The Accreditation Council for Graduate Medical Education (ACGME) of the American Medical Association possesses the facilities and staffing required to perform evaluations of the qualifications of the various programs and also the mechanism for accreditation of acceptance programs. The Board and the ACGME work cooperatively in evaluating and approving the training programs in this Commonwealth. A comity exists between the Board and the ACGME under which all intended observations of training programs for accreditation are communicated to the Board and the Board makes all requests for accreditation or investigation of training programs to the ACGME. If an investigation of the programs of the various institutions in this Commonwealth is to be conducted, the Board will provide one of its members or appoint an individual to accompany the investigator on each occasion. An institution within this Commonwealth seeking approval of its programs by the ACGME will be informed that action taken by the accrediting agency will be related to the Board.

49 Pa. Code § 17.23.  Thus, the ACGME's requirements are analogous to regulations promulgated by the State Board of Medicine.  Neither Commonwealth regulations nor ACGME's requirements form a contract with residency programs.

To the extent Salvatierra attempts to plead that the ACGME's requirements were somehow incorporated in his Contract with Millcreek, this argument lacks merit.  The Contract does not incorporate the ACGME's requirements.  Nor does the Contract provide that Millcreek and/or LECOM owe Salvatierra a duty to abide by the ACGME's requirements.  In fact, the Contract does not state that Millcreek's residency program was even accredited by ACGME.  Instead, the Contract expressly states that Millcreek's residency program was (at the time) an "AOA Accredited program."  [Am. Compl. Ex. D. § VI.O].

The Contract makes one reference to the ACGME:  "The trainee understands that completion of this training program may not guarantee eligibility for entry into [ACGME] accredited advanced standing residencies and fellowships.  A graduate trainee may be considered for ACGME advanced fellowships by applying for a fellow eligibility exception through the process outlined in section III.A.2.b at the ACGME Common Program Requirements."  [*Id.*].  This language merely referencing the ACGME requirements, but not specifically incorporating them by reference, is insufficient under Pennsylvania law to incorporate the ACGME accreditation requirements into the Contract.  *See In re Est. of Atkinson*, 231 A.3d

11

891, 899 (Pa. Super. Ct. 2020) ("The terms of a contract include terms in documents that a signed contract document <u>specifically and clearly identifies and expressly incorporates by reference</u>.") (citation omitted) (emphasis added).

Even if the ACGME requirements formed a contract between LECOM and ACGME, Salvatierra was not a party to such contract. And Salvatierra does not—and cannot—assert that he was an intended third party beneficiary of such contract. *See Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, No. 3:14-CV-3577-CMC, 2016 WL 3079466, at *49 (D.S.C. June 1, 2016), *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x 399 (4th Cir. 2019) (rejecting argument that resident was third party beneficiary of ACGME requirements).[4]

Under Pennsylvania law, a party alleging a breach of contract claim must plead: (1) the existence of a contract; (2) a breach of some duty imposed by a contract; and (3) damages. *E.g.*, *Heritage Valley Health Sys., Inc. v. Nuance Commc'ns, Inc.*, 479 F. Supp. 3d 175, 187 (W.D. Pa. 2020) (quoting *CoreStates Bank, N.A. v. Cutilo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Because the ACGME requirements do not constitute a contract, Salvatierra cannot assert a

---

[4] *See also Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992) (holding that party only becomes third party beneficiary if both parties to a contract "express an intention to benefit the third party in the contract itself, unless the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties . . . and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.").

claim upon which relief can be granted for alleged breaches of ACGME requirements.

### 2. Salvatierra fails to plead a legally viable breach of contract claim because Millcreek had no duty to renew the Contract.

Salvatierra attempts to disavow the actual PGY 1 contract he executed with Millcreek for his employment as a first-year resident and asserts that the Contract "cannot be the contract applied in Plaintiff's dismissal from the Internal Medicine Residency Program." [Am. Compl. ¶ 13]. But Salvatierra's residency employment with Millcreek was exclusively governed by the Contract. The Contract plainly provides: "This agreement is entered into by and between Daniel Alvarez Salvatierra, D.O. [] and *LECOM Health/Millcreek Community Hospital* [], for Residency Training in Internal Medicine in the Osteopathic Residency Year 2017-18." [Am. Compl. Ex. D § I].

Salvatierra has not pleaded a viable claim for a breach of the Contract based on his dismissal from the residency program because he had no contractual right to advance through Millcreek's residency program. The Contract repeatedly provided that the term of the Contract was one year, and that Salvatierra would only be reappointed for each subsequent year of the residency program if he satisfactorily completed the previous year. [Am. Compl. Ex. D §§ II, XI, XII]. The Contract unambiguously provided:

> The trainee understands and acknowledges that this agreement expires no later than one (1) year after its commencement date and that [Millcreek] does not commit itself to renewal of this agreement.  In the event that the trainee does not have a renewal of contract, the trainee will be notified of such sixty (60) days prior to the contract termination date.

[*Id.* § XII].

Millcreek twice extended the term of the Contract in good faith attempts at allowing Salvatierra to correct his performance deficiencies.  [*See* Am. Compl. Ex. D pp. 10-11].  Those extensions made the Contract's final termination date June 30, 2019.  [*Id.* p. 11].  Salvatierra was notified of his dismissal from the program (that the Contract was not being renewed) on April 17, 2019—74 days prior to the Contract's final termination date.  [*See* Am. Compl. ¶ 30].  Thus, Millcreek provided the requisite notice of nonrenewal required by the Contract.

Salvatierra fails to plead a breach of a duty imposed by the Contract because Millcreek had no contractual duty to renew the Contract.  Accordingly, Millcreek's decision not to renew the Contract cannot give rise to a breach of contract claim. *See, e.g.*, *Bootay v. KBR, Inc.*, No. 2:09-CV-1241, 2010 WL 3632720, at *11 (W.D. Pa. Sept. 9, 2010), *aff'd*, 437 F. App'x 140 (3d Cir. 2011) (explaining breach of contract claim fails as a matter of law where defendant owes no duty to plaintiff).

Moreover, the Contract unambiguously afforded Millcreek the right to terminate the Contract immediately in certain situations, namely, if a resident's performance endangered patient care.  As pleaded by Salvatierra, a patient under his care suffered a serious fall in early April 2019.  [Am. Compl. ¶ 25].  On April 17, 2019, Millcreek representatives met with Salvatierra and informed him of the investigation and formal report of this incident Millcreek submitted to the Pennsylvania Patient Safety Administration.  [*Id.* ¶ 26].  During this meeting, Millcreek notified Salvatierra that he was being dismissed from the residency program and that his Contract would not be renewed.  [*Id.* ¶ 30].

In addition to having no duty to renew the Contract, Millcreek had an unequivocal right to terminate the Contract (without notice) because the Program Director determined Salvatierra's performance fell below the minimum standards for patient care and endangered patient care.  [*See* Am. Compl. Ex. D § XI.A.2]. As pleaded, Dr. Eric Millie, Millcreek's Program Director, notified Salvatierra he was being dismissed from the residency program.  [Am. Compl. ¶ 30].  Millcreek's exercise of its contractual right to terminate the Contract cannot give rise to a breach of contract claim.  *E.g.*, *Cook v. Gen. Nutrition Corp.*, No. CV 17-135, 2017 WL 4340664, at *7 (W.D. Pa. Sept. 29, 2017), *aff'd*, 749 F. App'x 126 (3d Cir. 2018) (dismissing breach of contract claim because defendant had contractual right to terminate contract; listing cases).

Finally, Salvatierra did not exercise his contractual right to appeal his dismissal. The Contract incorporated the Staff Manual's Due Process Policy, which gave Salvatierra the right to appeal his dismissal within five days. [Am. Compl. Ex. E p. 22]. By complaining he was not advised of his right to appeal, Salvatierra implicitly admits that he did not exercise that right. [Am. Compl. ¶¶ 36-37].

### C. In the alternative, the Court must dismiss Salvatierra's demands for emotional distress and punitive damages.

If the Court does not dismiss the Amended Complaint for failure to state a claim, the Court must dismiss Salvatierra's claims for emotional distress and punitive damages. [*See* Am. Compl. ¶ 49 & p. 24 ("Wherefore" clause)]. "[E]motional distress damages are generally not recoverable in actions for breach of contract in Pennsylvania[.]" *Hersh v. CitiMortgage, Inc.*, 16 F. Supp. 3d 566, 575 (W.D. Pa. 2014) (quoting *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 522 (W.D. Pa. 2012) (internal citations omitted)). Similarly, "punitive damages are not recoverable in an action solely based upon breach of contract." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000) (quoting *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super. Ct. 1987)).

## IV.  CONCLUSION

Even after amending, Salvatierra has not pleaded—and cannot plead—a cognizable claim for breach of contract. The ACGME requirements are not a

contract; no contract exists among ACGME, LECOM, Salvatierra, and CMS. Further, Salvatierra had no contractual right to advance to the next year of the residency program.  Millcreek had no duty to renew the Contract after its term ended, so its decision to dismiss Salvatierra from the residency program and to not renew the Contract cannot constitute a breach of contract as a matter of law.

In addition to its right not to renew the Contract, Millcreek had a contractual right to terminate the Contract immediately and without notice if the Program Director determined that Salvatierra's performance endangered patient care. Finally, Salvatierra failed to avail himself of his right to appeal his dismissal from the residency program.  Accordingly, further amendment would be futile, and the Court should dismiss Salvatierra's Amended Complaint with prejudice.

Dated: June 26, 2023 **STEVENS & LEE, P.C.**

By: /s/ *Peter J. Adonizio, Jr.*

Peter J. Adonizio, Jr., Esquire
PA Attorney Id. No. 325990
425 Biden Street, Suite 300
Scranton, PA 18503
Tel:  (570) 969-5372
Fax:  (610) 371-1222
peter.adonizio@stevenslee.com

*Attorney for Defendant*